UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BOARD OF TRUSTEES OF THE UNITED
WIRE METAL AND MACHINE PENSION,
HEALTH AND WELFARE FUNDS; and the
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS LOCAL 810,

                    Plaintiff,

       - against -

5 BORO MECHANICAL, INC.,

                    Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**

11-CV-136 (SLT) (RER)

**TOWNES, United States District Judge:**

Plaintiffs, Board of Trustees of the United Wire Metal and Machine Pension Funds ("Funds"), and the International Brotherhood of Teamsters Local 810 ("Local 810"), bring this action against Defendant 5 Boro Mechanical, Inc., seeking to recover $80,950.00 in withdrawal liability and $35,718.30 in delinquent benefit contributions, plus interest, liquidated damages, as well as various fees and costs. Defendant did not answer or otherwise respond to Plaintiffs' complaint and Plaintiffs now move for default judgment. For the reasons set forth below, Plaintiffs' motion is granted.

**I.    BACKGROUND**

    **A.    Facts**

Plaintiff trustees are the named fiduciaries of the Funds, jointly administered, multiemployer, labor-management trust funds established and maintained pursuant to certain Collective Bargaining Agreements in accordance with Section 302(c)(5) of the Taft–Hartley Act, 29 U.S.C. § 186(c)(5). (Am. Compl. ¶ 4). Plaintiff Local 810 is a labor union within the meaning of Section 301 of the Taft-Hartley Act, 29 U.S.C. § 185. (Am. Compl. ¶ 7).

Defendant, as a member of the Staten Island Heating and Air Conditioning Association, was bound by that Association's collective bargaining agreement ("CBA") with Local 810 and therefore obligated to contribute to the Funds under the terms of the CBA and the applicable Agreement and Declaration of Trust. (Am. Compl. ¶ 13).

On or about November 9, 2009, Defendant withdrew completely from the Funds, triggering the imposition of withdrawal liability. (Am. Compl. ¶ 14). By letter dated July 26, 2010 ("Demand Letter"), the Funds notified Defendant that it had effected a complete withdrawal and therefore was subject to the payment of withdrawal liability. (Am. Compl. ¶ 16). The Demand Letter explained that the payment schedule provided for liability of $80,950.00 and that payments were to commence no later than 60 days after the letter's date, or September 26, 2010. (Am. Compl. ¶ 16). On September 27, 2010, the Funds sent another letter ("Default Letter") notifying Defendant that it was now in default and demanding immediate payment of the withdrawal liability amount plus accrued interest. (Am. Compl. ¶ 17). By letter dated December 27, 2010, the Funds again informed Defendant of the default and amounts due. (Am. Compl. ¶ 19). Defendant did not reply.

Plaintiffs commenced this action on January 10, 2011, pursuant to the Employee Retirement Income Security Act of 1974, ("ERISA"), 29 U.S.C. §1001 et seq., and the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1381 et seq. Plaintiffs have demonstrated that Defendant was properly served with the Summons and Complaint. (Docket Nos. 6, 7 Ex. 4). In addition, the Clerk's entry of default on May 11, 2011, indicates that Defendant has failed to answer or otherwise respond. On August 31, 2011, Plaintiffs moved for a default judgment, arguing that Defendant (1) completely withdrew from the Funds on or about November 9, 2009; and (2) failed to pay all required benefits contributions

on behalf of its employees under the CBA. (Am. Compl. ¶¶ 22, 28). As noted, Plaintiffs seek $80,950.00 for the first claim and $35,718.30[1] for the second claim, plus interest, fees and costs.

## II. DISCUSSION

### A. Standard of Review

"Where, as here, 'the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 623 (S.D.N.Y.1998) (quoting 10A C. Wright, A. Miller & M. Kane, Fed. Prac. & Proc. § 2688, at 58-59 (3d ed. 1998)). Although Federal Rule of Civil Procedure 55(b)(2) provides that damages in a default judgment may be determined through a hearing, "[d]etailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing." Chanel, Inc. v. Louis, No. 06-CV-5924(ARR)(JO), 2009 WL 4639674, at *4 (E.D.N.Y. Dec. 7, 2009) (citing Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991)). Moreover, a plaintiff need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 159 (2d Cir. 1992).

### B. Withdrawal Liability Claim

Under the MPPAA, "an employer who is obligated to contribute to a multiemployer pension plan [must] pay its proportionate share of the plan's unfunded vested benefits upon withdrawal from the plan." Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d 258, 261 (2d Cir. 1990) (citing 29 U.S.C. § 1381(a)). In response to such a withdrawal, "the entity maintaining the plan . . . must determine the amount of the employer's withdrawal liability,

---

[1] The amended complaint listed "approximately $36,078.30" in outstanding contributions, (Am. Compl. at 19 & ¶ 28), but the affidavit with accompanying exhibits reduced the amount to $35,718.30. (Docket No. 7, "Statement of Damages").

3

notify the employer of the amount and make a demand for payment." ILGWU Nat'l Ret. Fund v. Levy Bros. Frocks, Inc., 846 F.2d 879, 881 (2d Cir.1988); see 29 U.S.C. § 1399(b)(1). The statutory scheme of the MPPAA has been described as "pay-first-question-later," so that the employer must, regardless of any intention to request review or appeal, begin payment within 60 days of the demand letter. Bowers, 901 F.2d at 263; see 29 U.S.C. § 1399(c)(2). Failure to make timely withdrawal liability payments triggers the plan sponsor's entitlement to "immediate payment of the entire unpaid amount . . . , plus accrued interest." Trustees of Local 531 Pension Fund v. Flexwrap Corp., 818 F. Supp. 2d 585, 589 (E.D.N.Y. 2011) (citing 29 U.S.C. § 1399(c)(5)).

Furthermore, within 90 days of receiving the notice, the employer may request the plan sponsor to "review any specific matter relating to the determination of the employer's liability and the schedule of payments." 29 U.S.C. § 1399(b)(2)(A)(i). An employer seeking to dispute the liability amount must thereafter seek arbitration within 60 days of either (1) the date the plan sponsor completes a requested review; or (2) 120 days after the request for review is made, whichever is earlier. 29 U.S.C. § 1401(a)(1). Significantly, if the employer fails to seek arbitration in a timely manner, "it is barred from challenging the amount of withdrawal liability calculated by the plan." Flexwrap Corp., 818 F. Supp. 2d at 589 (citing 29 U.S.C. § 1401).

In this case, the Funds' Demand Letter, dated July 26, 2010, notified Defendant that its withdrawal liability amounted to $80,950.00, with a payment schedule of $1,061.36 per quarter for 80 quarters. (Am. Compl. ¶ 16; Docket No. 7 Ex. G; see also Ex. F (actuary report and interest rate explanation)). As indicated in the Funds' Default Letter, dated September 27, 2010, Defendant failed to make any payments, triggering the requirement of immediate payment of its total withdrawal liability and interest. Defendant also failed to seek arbitration within the

prescribed statutory timeframe. Defendant therefore has waived its right to contest the amount of withdrawal liability proffered by Plaintiffs. Indeed, "[t]he law is unforgiving where, as here, an employer fails to take action in a timely manner after being notified," and such failure "will result in the court's adoption of the sum proffered by the plan, even in the absence of documentation as to how the figure was calculated." Labarbera v. United Crane & Rigging Servs., Nos. 08-CV-3274, 08-CV-3983(DLI)(ALC), 2011 WL 1303146, at *5 (E.D.N.Y. Mar. 2, 2011). Accordingly, the Court awards Plaintiffs $80,950.00 in withdrawal liability plus $20.32 in accrued interest.

### C. ERISA Contributions Claim

In support of the second claim, Plaintiffs have submitted the affidavit of counsel Mark. A Torres, dated August 31, 2011, (Docket No. 7), which exhibits copies of (1) relevant portions of the CBA, (Ex. A); (2) employer reports for three covered employees, (Ex. C); (3) relevant portions of the Trust Agreement, (Ex. D); and (4) chart of principal and interest calculations, (Ex. E). Plaintiffs have also filed a portion of a stipulation extending the terms of the CBA from May 2007 to May 2010, with attendant increases in the welfare/pension contributions. (Docket No. 8). In reviewing the submissions, the Court observes a few missing pieces. Each employer report covers a staggered period for the welfare/pension and dues amounts. For example, a single report will cover June 2008 for welfare/pension, but July 2008 for dues:

```
SHOP #                 000748
STATEMENT DATE         01/07/2011
DUES AND FEES          07/2008
WELFARE AND PENSION    06/2008
```

(Ex. C at 21). This particular report is the earliest included, so that there is no report showing dues for June 2008. Plaintiffs provide no explanation for why there are no reports included for dues in June 2008, November 2008, December 2008, and November 2009; or for

welfare/pension in October 2008, November 2008, and October 2009.  (See Ex. C & Ex. E).  Furthermore, Plaintiffs' chart of principal and interest calculations (which includes welfare and pension figures, but not dues) reflects the absence of these monthly reports, but does not explain why June 2008 shows only $417.30 in welfare contributions, rather than the $1,320 listed in that month's report.  (compare Ex. E with Ex. C at 21).

The Court's calculation of owed pension contributions (given the missing months) matches that of Plaintiffs:  $8,139.00.  (Ex. E).  The Court's calculation of owed welfare contributions (given the missing months and Plaintiffs' lower June 2008 figure of $417.30) also matches that of Plaintiffs:  $26,487.30.  (Ex. E).  As noted, Plaintiffs' chart does not include a tabulation of owed dues.  Relying on the reports (which do not cover June 2008), the Court finds owed dues in the amount of $3,410.  Adding these three figures together results in a total contribution amount of $38,036.30, which is greater than the sum Plaintiffs demand:  $35,718.30.  (Docket No. 7, "Statement of Damages").  There may be a discrepancy within the dues calculation, but the Court will accept Plaintiffs' lower figure as the submissions do not explain where a mistake may have occurred.  Moreover, the Court is satisfied that the interest calculation of $5,741.39 is correct based upon an annual interest rate of 18%, as provided in the Amendment to the Trust Agreement.  (Ex. D at 7 ¶ 2).

Plaintiffs are also entitled to reasonable attorneys' fees and costs associated with the action.  29 U.S.C. §1132(g)(2)(D).  They have not specified any amount of attorneys' fees, claiming only $350 for filing fees and $79 for the process server fee.  The Court finds these amounts reasonable.

### III.    CONCLUSION

For the reasons set forth above, Plaintiffs' motion for a default judgment (Docket No. 7) is granted and Plaintiffs are awarded $80,950.00 in principal withdrawal liability; $20.32 in interest on withdrawal liability for October 2010 to January 2011 at 3.25%; $35,718.30 in unpaid benefit fund contributions and dues for the period June 2008 to April 2010; $5,741.39 in interest on unpaid contributions at 18%; and $429 in costs; for a total of $122,859.01.

**SO ORDERED.**

_____/s/_____
SANDRA L. TOWNES
United States District Judge

Dated: September 28, 2012
       Brooklyn, New York